Thank you very much. The next case is BUSH v. United States. Mr. Redding. Good morning, Your Honor. I'm going to please the court. I'd like to first start out with a general observation. If this dismissal under 7422H in this case is sustained, then it renders any tax court decision in a temporary proceeding that is favorable to a taxpayer a meaningless piece of paper, because the taxpayer would have no forum in which he could then come back to the court in a refund case and say the government did not properly apply that decision. That is the ground that we're citing here. We're not arguing that the court should re-evaluate whether or not the partnership's transactions were tax-motivated. We are very plainly, clearly, and explicitly arguing that there was no tax-motivated determination in the controlling opinion. The controlling opinion in this case gets a little complex, because it is based on a dismissal for lack of jurisdiction motion that, contrary to the normal statutory rule in the dismissal for failure to prosecute, would sustain the FPAW in full. The government came in and asked for alternative adjustments that were not consistent with the FPAW. And you also have the underlying prior order by the court that the partners in the Dillon partnership and the other Denver partnerships would, in fact, be subject to the decision in Kraus. So what you really have here is a final dismissal in this case that applies that prior determination that Kraus would control. So you really have to look at Kraus, not simply what is contained in this dismissal. The government has made basically the same argument, expanding Pratty and Deegan way beyond what they did. In the Irvine case, in the Southern District of Texas, the court in that case ruled in our favor on this issue. That case is now on appeal in the Fifth Circuit. What relevance does our Kiener case have? Kiener is very relevant. Kiener and Pratty, they seem to address a similar issue. But in those cases, when you read the case, you'll see that the court, in every instance, determined that there had been a prior TMT determination and that, therefore, our only claim could be to seek redetermination of that prior determination. Here, there has been no such determination. In fact, this case is exactly what the Kiener case specifically says. Kiener was not. There's a quote in the case, and I can't recite it exactly, but it basically says, you know, taxpayers assert that this would be, or that the claim could be that there was no prior determination. That's not this case. That's what's said in Kiener. Well, that is this case in this instance. Do you read Kiener to keep jurisdiction open, then, in the instance of a tax-motivated transaction? Yes, for certain types of claims. You cannot come back and seek a new determination of what the partnership-level transaction was, or what its nature was. You cannot come back and seek to overturn a prior determination of that. But as in any instance where you are going to another court to enforce a judgment by a different court, and saying to that court, we either want to defend based on that judgment, or we want to enforce that judgment, the court naturally has the authority to look at that judgment and see if it does what the party is alleging. If the court below reaches the tax-motivated transaction determination, won't we be defeating the purpose of having one partnership-level proceeding? No, sir, we're not. Because, again, if you were going back and addressing whether or not there was a tax-motivated transaction, yes, it would be. But that is not what the court is being asked to look at. It's being asked to simply look at that judicial proceeding and see if there was a TMT determination. And if there was not, then the government's imposition is completely wrong. It's inappropriate. Well, that comes up in the second part when we talk about the three-year statute. I mean, the six-month statute of limitations. But dropping to that for just a second to make this point, that is equally relevant there, because the six-month statute of limitations applies to, what's the language, where the commissioner has erroneously computed any computational adjustment. It doesn't say any erroneous computational adjustment assessment. It says where the commissioner has erroneously computed a computational adjustment. The government in this case would have you expand that to mean any invalid or improper computational adjustment assessment. Well, that in turn would make the new statute that was enacted in 97, the additional subsection, or paragraph, in 6231C that talks about claims that the IRS erroneously imposed a computational adjustment. But do you agree that the laws that previously existed applies in this case? 6231C1A, the six-month statute, does not apply to this case. It was in effect, but it's not the type of claim it relates to. The type of claim it relates to for the first time became subject to that six-month statute in 97, when they included claims that the commissioner had erroneously imposed a computational adjustment. The government would have us read out the term erroneously computed from 6231C1A, which defines the type of claim that's subject to that statute as a claim that the commissioner of the IRS erroneously computed a computational adjustment. Now, erroneously computed doesn't mean something. It shouldn't even be in the statute. It's superfluous. Not only that, to read it that way renders 6231C1C, enacted in 97, completely meaningless, because it would have already been covered. Have other courts done what you're proposing here, to look beyond to see if there's a technical transition? Absolutely, Your Honor. In the Fifth Circuit, in Duffy, Duffy held, in looking at the same issue, Duffy held that the court, the refund suit court, clearly has jurisdiction to make two determinations with regard to 6621C post-TEFRA. One is simply the $1,000 threshold issue, whether or not the understatement of tax exceeded $1,000. And, and they specifically, she specifically says and, and the language in Duffy was directly adopted by the Fifth Circuit. So this is really a Fifth Circuit opinion. It says and whether or not a TMT determination had been made. And that is exactly the issue that we seek to litigate here. Was, did Krauss, as applied in this case, did it constitute a TMT determination? And that is what the court, the Fifth Circuit addressed in Copeland and said, no, it's not. Krauss didn't make a TMT determination. And it's complicated to look at Krauss because Krauss was a mishmash of pre-TEFRA, post-TEFRA, and even post-TEFRA partner level litigation that was all consolidated together. You're telling us, I gather, that the Fifth Circuit law should apply and that in Duffy should apply because these taxpayers are in the Fifth Circuit, and therefore that the Court of Federal Claims can't choose the law of the Ninth Circuit, for instance, or if they want to. No, New York, I don't assert the Fifth Circuit controls. I'm asserting the Fifth Circuit as very compelling precedent because it directly addresses these issues. Okay. And there is no directly compelling authority in the Federal Circuit. On the issue of whether the interpretation of Krauss, I think you look there at Hill versus Copeland, the Ninth Circuit versus Fifth Circuit. And I think the Fifth Circuit analysis and argument is extremely compelling. It's correct. The Fifth Circuit says that you can't apply 183 at the partnership level to begin with. And it makes that analysis by relying on both, both, both of them. Well, it relies on the language in the definition in Section 183 itself in statute and also in the regulation adopting a 183 disallowance as a TMT. Those are two different things. They both contain language that reads as follows. Any deduction disallowed for any period under Section 183 relating to an activity engaged in by an individual or an S corporation. The Fifth Circuit... Why should your clients appeal the Vulcan oil dismissals? Aren't you getting a second bite at the apple here? No, Your Honor, we're not. There is no reason for our client to have appealed the Vulcan oil dismissal. There was no determination in that dismissal of a TMT. Why would he appeal it? Furthermore, our client actually has no right of appeal. The Cooks are a less than 1% partner. That makes them a non-noticeable partner who has no right to appeal the case. Do you want to save your rebuttal time, Mr. Reddy? Yes, Your Honor. Thank you. Thank you. Ms. Hauser. Thank you, Your Honor. Good morning. I think it's absolutely clear in this circuit that there is no TMT. Don't you have to look and see? No, you can't look to see whether there was a partnership transaction was a TMT. Well... A teener says pretty clearly, leaves jurisdiction open if there's... Don't you have to check into that tax-motivated transaction status? Not into the status of the transaction itself. Keener leaves that open, doesn't it? Into the transaction status itself to re-litigate whether the partnership transaction was tax-motivated? I don't think Keener leaves that open at all. The status of the partner, whether the partnership's transaction was tax-motivated is quintessentially a partnership-level determination. Whether that determination was made, we might be able to look into here, but not whether that transaction was tax-motivated. Did anyone look into that? In this case? Yes. Isn't that the thing the trial court absolutely refused to look at? But... And just said, all I see is partnership, I'm through. Because it was looking at this court's determinations in Keener and Pratty, which clearly indicated that even the question in the Pratty decision, this court indicated that even the question whether that was made, if you are questioning the underlying partnership-level determination, that is a partnership-level issue. So, looking at the question, was Krauss correctly decided? That's a partnership-level issue. That is now closed. It's too late to look at the question, was Krauss correctly decided? And that's what the Court of Federal Claims was refusing to do here, refusing to go under the final partnership-level determination and consider something that would affect... How do you determine if the refund is a partnership item without checking into the tax-motivated transaction status? They're claiming a refund, arguing for a refund that would be available to them if the partnership did not engage in tax-motivated transactions. Right? Is that your understanding? That's my understanding. If they're not, and they say, we're not. They say they're not seeking a refund. No, they say we're not involved in a tax-motivated transaction. But whether the partnership was involved in a tax-motivated transaction was a question for the partnership-level proceeding. Okay. It seems to me like you've got to at least take a look at both, right? Don't you have to at least look to see if there's a tax-motivated transaction? I feel like we must be talking about slightly different things. Okay, go ahead. Let me suggest a sort of simplified version. Imagine that IRS issued an FPAW determining a tax-motivated transaction and that 6621C interest would apply. And that FPAW was never challenged and became final. And then the IRS issued 4549A stating that 6621C interest would apply, and the taxpayer paid and sued for a refund. We would say that TMT determination was made at the partnership level and could not be proceeded. That's the point I'm trying to make. What I see the court doing is looking and saying, I see in this case a partnership. I'm not even going to check any further and see if there's a tax-motivated transaction. Is that what happened? If that is what happened, if that's how you read the Court of Federal Plans opinion, then I think they... That would be error, right? Because you'd have to at least look. You'd have to at least look to see if there was a tax-motivated transaction determination. Yes. You would look at the underlying facts to see if there was a tax-motivated transaction. But you'd have to at least look to see if you've got jurisdiction. Yes, that would be a way. Assume for a moment that I'm reading it exactly that way. The court refused to do that. Show me that that's wrong. Show me how the court is correct. It seems to me it's wrong. It seems to me it refused to make even the superficial check for a TMT that's necessary to determine if you've got jurisdiction. The court is correct that whether a TMT determination was made is a partnership item. It might nevertheless have jurisdiction under 7422H through the 6230C exception, section 7422H, for a claim that the adjustment was erroneously computed when applied to the partner level. But it was absolutely correct that this is a partnership item and that it cannot look to the merits of the partnership item. And since the arguments the tax payers are making here are about the merits of Krauss, whether Krauss was correctly decided, how Krauss should be interpreted. But three courts have recently said Krauss didn't make a TMT determination. Can't we look at that? Three courts have recently said that. Am I correct on that? I believe that Hill and Hildebrand both upheld the TMT determination, the imposition of 6621C interest. And those are the cases that are directly evaluating Krauss. Krauss isn't relevant here as precedent or even as persuasive authority. It's relevant here as part of the history of the case. If three courts have said Krauss didn't make a TMT determination, why don't we look and see? Because Krauss is a partnership level proceeding and the partnership level proceeding is now closed. You're talking about the Ninth and Tenth Circuit cases. I'm talking about Copeland, McGann, and Bartimo, right? But those are not appeals of the tax court decision in Krauss. They're not part of the procedural history of that case. It seems like such a simple matter and I don't seem to be even communicating with you. Why don't we just have the court take a look and see if there's a TMT here? It's almost a question of, you've always got jurisdiction to determine if you've got jurisdiction. So you've got to look and see if you've got jurisdiction. The way you do that in this instance is check on a TMT. Check on whether there was a TMT determination. Exactly. There was a TMT determination. I've suggested three cases have done that, reached a different conclusion than the Ninth and Tenth Circuit cases that you're talking about. We just want them to look. I think it's important, again, to draw the distinction. Looking to see if there was a TMT determination in the tax court proceeding does not mean looking to subsequently decided cases that are not part of that procedural history. Look for that TMT determination. That sounds to me like you're saying what I'm saying. Right. In that case, the other point I would like to make is that the statute actually provides for that. And I'm reading that the trial court did not have done that and therefore have erred, have made a superficial determination. That skirted their obligation to at least see if they've got jurisdiction. That Keener left open, our 2009 case. Perhaps the Court of Federal Claims did not use the best language they could have, but I don't think that it was a mistake for them to dismiss the case overall. Because, as we argued in our brief, there was a TMT determination in the partnership level proceeding in the tax court here. Did the trial court here even look to see if that was true? The trial court looked at the history, we said it's the history of the tax court proceeding at the partnership level. Did it look to see if there was a TMT determination? I don't believe so. I don't believe so either. Isn't that error? This court could affirm, nevertheless, on the record, as we argued in our brief, and also on the second issue that we raised in our brief, which is to look at whether there was a TMT determination. We could do the trial court's job for them and make a determination ourselves as to whether there was a TMT determination, or we could ask them to go back and correct their error. Are we still communicating? Yes, I think that's correct. Okay, thank you. The second argument we made in our brief was that the statute actually provides, and this goes a little bit to what we were just talking about.  We don't need to fall back on that principle here, because section 7422H actually has an exception for claims brought pursuant to 6230C. And 6230C provides mechanisms for tax payers to challenge the way that the IRS applies the partnership level determination to the individual partner. So that you can conclude that a partnership level determination, that a particular decision is a partnership level determination. In fact, I think the question whether a TMT determination was made must be a partnership level, is a partnership item that applies equally to all partners. But, of course, you can go through the 6230C exception to 7422H in order for an individual partner to challenge that issue in a refund suit. So you say Copeland was wrongly decided and shouldn't be followed. I'm saying that Copeland is not relevant here because it's not part of the history of the case at issue. It's also not a TEFRA case. It involved pre-TEFRA years. And so it was not concerned about the, it was not in the same procedural posture as this case. The cases that are relevant here are the Crouse decision in the tax court and the courts of appeals directly affirming that. Not other cases later looking back at Crouse as a matter of precedential persuasive authority. Thirty years ago I worked for the Ways and Means Committee and thought I'd be a tax lawyer. I'm starting to feel very glad that my life took a different turn. I would like to, just before my time runs out, revert to our claim that Duffy was correct about the timing of a 6230C claim. It needs to be brought within six months of getting notice of the IRS's computational decision. Here the taxpayer's claim came more than two years after that. Not only more than two years after the 4549A, but as the decision in Duffy reasons as well, more than two years after the taxpayer obviously had actual notice because they full paid the amount of the interest assessed under 6620C. Thank you. Mr. Reddy? Thank you, Your Honor. First, this is a quick comment. Thirty-one years ago I became a tax lawyer. I'm happy to say that my plans are that within the next year I will cease to be one. No judgment on those questions. Let's go ahead. Your Honor, in your review of government counsel, the phraseology kept coming up of whether or not it was a TMT or whether or not there's a TMT determination. And I think those are two completely different questions. We're not challenging whether or not the transactions were TMTs. It was never decided and it had to have been decided to impose penalty interest. So the real question is simply, has there been a binding TMT determination? And I think putting the word determination on the end there is extremely critical to understanding what this case is about. In fact, the determination of whether or not there was a TMT determination is not a partnership item. And it's not a claim attributable to a partnership item. If you go into the definition of partnership items, they are things that the government has designated by regulation or more appropriately determined for the partnership's taxable year at the partnership level. That certainly does not apply to what a court did 30, 20 years later. This type of claim doesn't fit under the kind that are precluded by 7422H. I want to make that argument very clear. I would also like to disabuse this court of the misrepresentations in the government's brief and in its presentation just now about the FPAW. There is no determination of a 6621C imposition or of a TMT set out in the FPAW, even if you look behind the cross determination. The FPAWs are in the administrative record. I invite you to review them carefully. They say nothing about imposing 6621C penalty interest. Where that confusion comes from is something I mentioned briefly initially. And that's that Krauss was a mishmash of pre-TEFRA, TEFRA, TEFRA partnership level, and TEFRA period individual level matters and cases. Something that is unclear to me even today how it even came before the court. If you review the first two pages of the Krauss opinion, on the second page it discusses the issues to be involved in the case. And it talks about the Hildebrands who were individual petitioners at the individual partner level. And it talks about the petition on behalf of the partnerships and says that a docket number so-and-so with respect to Barton Enhanced Oil, da-da-da-da, and by notice of final partnership administrative adjustment, respondent disallowed Barton's ordinary losses for 1982 and 83 in the amounts of X and X. But then it goes on, and this is something that is unclear how it even became part of that case. It says respondent also determined increased interest and additions to tax under 6621C, 6659, and 6661 with regard to petitioner Gary E. Krauss' 1982 and 1983 individual federal tax liability. That's not addressed in the FPAW. I believe that somehow that case originally even involved a stat notice to the individual partner, Mr. Krauss, that was a part of that case. And I think it's worthy to note that on the final page of Krauss, which is a long opinion, where it addresses the application of 6621C, it says it applies to the petitioners. It doesn't say it applies to the partner. And the only petitioners for whom it was an issue in Krauss, really, were Mr. Krauss individually and Mr. Hildebrand individually. It's not in the FPAW. It's not a partnership-level issue being determined in Krauss, believe it or not. I didn't actually tumble to that until last night, but I asked the court to look at that second page of the Krauss opinion. Under TEFRA, there is no way that in a TEFRA proceeding, especially under pre-'97 law, that those penalties could even be an issue in the case. There had to be another mechanism by which Krauss got before the court. Again, we're not arguing about the merits of the Krauss determination. We're saying that Krauss did not determine. We're not asking the court to redo Krauss. We're asking it to interpret Krauss. And I would note that the government asserts that Bartimo and McGann are not relevant, but McGann came out of the federal circuit. McGann was appealed, even, by the government, who then chose to withdraw the appeal and go back and try to get another judge to agree with them to then make us bring the appeal up. If that's not judge-informed shopping, I don't know what is. This case was decided by one judge of the claims court in our favor. They dropped the appeal of it and then made us try it before another judge so that they could get a different case to appeal. Thank you, Your Honor. Thank you, Mr. Redd.